1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    DEVIN FORREST, individually, and on
      behalf of all others similarly situated,
12                                                    No. 2:25-cv-00257-TLN-JDP
                         Plaintiff,
13
                  v.
14                                                    **ORDER**
      MAV KG, LLC, a limited liability
15    company, and DOES 1 to 10, inclusive,

16                       Defendants.

17

18          This matter is before the Court on Defendant MAV KG, LLC's ("Defendant") Motion to

19    Compel Arbitration (ECF No. 5) and Motion to Amend (ECF No. 19). Also before the Court is

20    Plaintiff Devin Forrest's ("Plaintiff") Motion to Remand. (ECF No. 8.) All motions are fully

21    briefed. (ECF Nos. 12, 13, 15, 17, 21, 22.) For the reasons set forth below, the Court DENIES

22    Plaintiff's Motion to Remand (ECF No. 8), DENIES Defendant's Motion to Amend (ECF No.

23    19) as moot, and DENIES Defendant's Motion to Compel Arbitration (ECF No. 5).

24    ///

25    ///

26    ///

27    ///

28    ///

                                                  1

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On October 28, 2024, Plaintiff filed this putative wage and hour class action against Defendant — his former employer — in Placer County Superior Court.  (ECF No. 1-4 at 5–29.)  Defendant removed the action to this Court on January 21, 2025.  (ECF No. 1.)  On February 18, 2025, Defendant moved to compel Plaintiff's claims to arbitration.  (ECF No. 5.)  On February 29, 2025, Plaintiff moved to remand the action to Placer County Superior Court.  (ECF No. 8.)  On March 31, 2025, Defendant moved to amend its Notice of Removal.  (ECF No. 19.)

**II.    MOTION TO REMAND**

A.    Standard of Law

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending.  28 U.S.C. § 1441(a).  The district court has original jurisdiction over civil actions between citizens of different states in which the alleged damages exceed $75,000.  28 U.S.C. § 1332(a)(1).  The party asserting federal jurisdiction bears the burden of proving diversity.  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986) (citing *Resnik v. La Paz Guest Ranch*, 289 F.2d 814, 819 (9th Cir. 1961)).  Removal statutes are to be strictly construed against removal.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), *overruled on other grounds in Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87–89 (2014).

The amount in controversy is determined by reference to the complaint itself and includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract.  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).  Where the complaint does not pray for damages in a specific amount, the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)).  If the amount is not facially apparent from the complaint, the Court may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  *Id.* (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995).

2

B.    Analysis

Plaintiff argues this action should be remanded because: (1) Defendant has failed to establish the amount in controversy in this action exceeds $75,000,[1] and (2) Defendant improperly reserved its right to remove the action based on the Class Action Fairness Act ("CAFA").  (ECF No. 8-1.)  Plaintiff also argues attorneys' fees and costs should be awarded based on Defendant's "objectively unreasonable removal." (*Id.* at 13.)  The Court addresses the arguments in turn.

i.    *Amount in Controversy*

Plaintiff contends Defendant relies on speculative and unsupported assumptions regarding attorneys' fees to fabricate an amount in controversy exceeding $75,000.  (ECF No. 8-1 at 2.) Specifically, Plaintiff argues Defendant assumes, without evidence, attorneys' fees will be $150,000.  (*Id.* at 2.)  Plaintiff contends Defendant's estimate as to the amount of hours it will take to litigate Plaintiff's claim is conclusory and unsupported by an explanation or evidence.  (*Id.* at 8.)  Further, Plaintiff contends Defendant's estimate as to the amount of hours it will take to litigate Plaintiff's claim includes work that would be conducted on behalf of the putative class. (*Id.* at 9.)  Finally, Plaintiff argues Defendant's estimate of attorneys' fees attributable to Plaintiff's claims is incorrect because the estimated attorneys' fees must be distributed on a pro rata basis amongst the named plaintiff and all putative class members.[2]  (*Id.* (citing *Magee v. Iconix Waterworks (US) Inc.*, No. 2:20-cv-00840-KJM-DB, 2020 WL 4188607, at *3 (E.D. Cal.

---

[1]    The Court notes the parties do not dispute that diversity of citizenship exists. (*See generally* ECF Nos. 8-1, 13, 17.)

[2]    Plaintiff also argues the attorney's hourly rate used to calculate the amount in controversy should not apply because: (1) the attorney whose hourly rate was used, Justin Marquez ("Marquez"), is no longer with the firm and (2) the rate applied to a complex class action.  (ECF No. 8-1 at 8.)  The Court finds both that these arguments are unpersuasive and they do not warrant lengthy discussion.  First, at the time of removal, Marquez was counsel of record and signed Plaintiff's Complaint.  (ECF No. 1-4 at 61.)  Thus, Defendant appropriately used his hourly rate to calculate the amount in controversy.  As to Plaintiff's second argument, Plaintiff provides no evidence that Marquez would have used a different, lower hourly rate to litigate Plaintiff's individual wage and hour claim.  Accordingly, the Court declines to further consider Plaintiff's underdeveloped argument.

3

1    2020)).)

2         In opposition, Defendant maintains it properly calculated Plaintiff's individual share of

3    attorneys' fees for the amount in controversy.[3]  (ECF No. 13 at 8.)  Specifically, Defendant

4    argues: Plaintiff filed an individual case; it provided evidence in support of its calculation of

5    attorneys' fees in the form of a declaration under oath and Plaintiff has failed to submit any

6    evidence in support of its contention that a different amount of attorneys' fees is reasonable; and

7    disaggregation of the estimated attorneys' fees is inapplicable because Defendant's removal is

8    based on Plaintiff's likely damages in his individual wage and hour claims.  (*Id.* at 11–24.)

9         Upon review of Defendant's Notice of Removal and the evidence submitted in support of

10   its opposition to Plaintiff's Motion to Remand, the Court finds Defendant has sufficiently

11   established the amount in controversy exceeds $75,000.  Evidence establishing the amount is

12   required by 28 U.S.C. § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the

13   defendant's allegations in its notice of removal.  *See Owens*, 574 U.S. at 89.  Here, Defendant

14   cites to wage and hour cases asserting individual claims in which courts have recognized an

15   attorney typically spends far more than 100 hours on such cases and others in which courts

16   awarded attorneys' fees exceeding $100,000.  (ECF No. 1 at 20.)  Furthermore, Defendant

17   _____

18   [3]    Defendant also contends Plaintiff violated the Court's Civil Standing Order by filing his
     Motion to Remand without raising either of his arguments during the meet and confer process.
19   (ECF No. 13 at 10.)  In response, Plaintiff does not directly contradict Defendant's argument and
     instead argues he sufficiently attempted to meet and confer.  (ECF No. 17 at 2–3.)  The Court
20   finds Plaintiff did not meaningfully meet and confer prior to filing his motion, which indeed
     violates the Court's Civil Standing Order.  While troubled by Plaintiff's lack of transparency, the
21   Court exercises its discretion to proceed and address Plaintiff's motion on the merits.  The parties
     are warned that any future failure to meet and confer could lead to the Court striking the motion
22   in its entirety.

23       Defendant further argues Plaintiff agreed to binding arbitration of any disputes arising out
24   of Plaintiff's employment on an individual basis.  (ECF No. 13 at 12.)  The Court addresses this
     argument below when discussing Defendant's Motion to Compel Arbitration.
25
         The Court also notes both parties violated the Court's Civil Standing Order by failing to
26   adhere to the page limits set by the Court.  While the Court reaches the merits of the parties'
     motions in its discretion and for judicial efficiency, the parties are warned any future violations
27   could lead to the Court striking the motions entirely.

28
                                                    4

1    provides an estimate of time it would take for the various tasks necessary for Plaintiff to prepare

2    for and litigate his case on an individual basis and projects the amount of attorneys' fees for such

3    tasks to amount to over $190,000.  (ECF No. 13 at 17.)  The various tasks include: fact

4    investigation and drafting the complaint; drafting a remand motion and reply thereto; drafting an

5    opposition to a motion to compel arbitration; conducting written discovery and document review

6    for Plaintiff's individual claims; preparing Plaintiff for and defending his deposition; preparing

7    for and taking the deposition of Defendant's person most knowledgeable as to Plaintiff's

8    individual claims; preparing for and taking the deposition of Plaintiff's supervisor; opposing

9    Defendant's motion for summary judgment; and preparing for and appearing at the trial for

10   Plaintiff's individual claims.  (*Id.* at 17–18.)  Plaintiff does not argue, and the Court does not find,

11   Defendant's estimates are unreasonable.

12          Further, the Court finds Plaintiff's reliance on *Magee* misplaced.  In *Magee*, the court

13   found the defendant's attribution of half of the total estimate of class-wide attorneys' fees to

14   plaintiff's attorneys' fees was improper.  2020 WL 4188607, at *2.  Here, in calculating its

15   amount in controversy, Defendant has not allocated any of the attorneys' fees to litigating the

16   entire putative class action.  Instead, Defendant's removal is based on Plaintiff's likely damages

17   on his individual wage and hour claims and his likely attorneys' fees incurred in litigating those

18   claims.  (ECF No. 13 at 17–18.)  In that way, *Magee* is distinguishable.

19          Accordingly, the Court finds Defendant has sufficiently established the amount in

20   controversy exceeds $75,000.

21                          *ii.*        CAFA

22          Plaintiff contends Defendant's attempt to "reserve" the right to invoke jurisdiction under

23   CAFA is procedurally improper and legally insufficient.  (ECF No. 17 at 7–9.)  In opposition,

24   Defendant argues this Court has jurisdiction pursuant to CAFA and provides facts to support

25   removal under such.  (*Id.* at 24.)  Defendant also filed a motion for leave to file an amended

26   notice of removal to cure the jurisdictional allegations that Plaintiff contends are defective.  (ECF

27   No. 19-1.)

28          Because the Court concludes Defendant has sufficiently established the amount in

5

1  controversy exceeds $75,000 — and therefore, has jurisdiction pursuant to 28 U.S.C. § 1332 —

2  the Court does not address whether Defendant improperly reserved its right to remove the action

3  based on CAFA.

4      In sum, the Court DENIES Plaintiff's Motion to Remand and Plaintiff's request for

5  attorneys' fees and costs.  (ECF No. 8.)  Because the Court need not reach Defendant's Motion to

6  Amend (ECF No. 19), the Court DENIES said motion as moot.

7  **III.    MOTION TO COMPEL ARBITRATION**

8          A.    Standard of Law

9      "[T]he federal law of arbitrability under the Federal Arbitration Act ('FAA') governs the

10 allocation of authority between courts and arbitrators."  *Cox v. Ocean View Hotel Corp.*, 533 F.3d

11 1114, 1119 (9th Cir. 2008).  There is an "emphatic federal policy in favor of arbitral dispute

12 resolution."  *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985).  As

13 such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of

14 arbitration, whether the problem at hand is the construction of the contract language itself or an

15 allegation of waiver, delay, or a like defense to arbitrability."  *Id.* at 626 (quoting *Moses H. Cone*

16 *Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

17     Generally, in deciding whether a dispute is subject to an arbitration agreement, the Court

18 must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the

19 agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207

20 F.3d 1126, 1130 (9th Cir. 2000).  The Court's role "is limited to determining arbitrability and

21 enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the

22 arbitrator."  *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).

23     "In determining the existence of an agreement to arbitrate, the district court looks to

24 'general state-law principles of contract interpretation, while giving due regard to the federal

25 policy in favor of arbitration.'"  *Botorff v. Amerco*, No. 2:12-cv-01286-MCE-EFB, 2012 WL

26 6628952, at *3 (E.D. Cal. Dec. 19, 2012) (quoting *Wagner v. Stratton*, 83 F.3d 1046, 1049 (9th

27 Cir. 1996)).  An arbitration agreement may only "be invalidated by 'generally applicable contract

28 defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to

1    arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."

2    *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339(2011) (quoting *Doctor's Assocs. Inc. v.*

3    *Casarotto*, 517 U.S. 681, 687 (1996)).  Therefore, courts may not apply traditional contractual

4    defenses, such as unconscionability and duress, in a broader or more stringent manner to

5    invalidate arbitration agreements and thereby undermine FAA's "principal purpose" to "ensure

6    that private arbitration agreements are enforced according to their terms."  *Id.* at 1748 (quoting

7    *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

8                    B.    Analysis

9            Defendant argues Plaintiff is contractually bound by an arbitration agreement containing a

10   class action waiver and requiring final and binding arbitration of any claims related to Plaintiff's

11   employment on an individual basis ("the Agreement").  (ECF No. 5-1.)

12           In opposition, Plaintiff argues Defendant is not a named party or signatory to the

13   Agreement and thus, cannot enforce it.[4]  (ECF No. 12 at 4–5.)  Plaintiff further contends

14   Defendant is not a third-party beneficiary to the Agreement either.  (*Id.* at 5.)  Specifically,

15   Plaintiff argues: (1) the Agreement explicitly defines who it is intended to benefit and apply to

16   and does not include Defendant in any way; (2) Defendant cannot show that a "motivating

17   purpose" of the Agreement was to provide a benefit to it; and (3) allowing Defendant to enforce

18   the Agreement would contradict the reasonable expectations of the contracting parties.[5]  (*Id.* at 5–

19   8.)

20           In reply, Defendant contends as of January 1, 2024 — the effective date of the

21   Management Services Agreement — all employees of Maverick, Inc. became employees of

---

22   [4]      Plaintiff also argues Defendant has not adequately shown Plaintiff signed the Agreement.
23   (ECF No. 12 at 8–11.)  Because the Court concludes Defendant is not a named party or signatory
24   to the Agreement and thus cannot enforce the Agreement, the Court does not address this
     argument.

25   [5]      Although Defendant argues the Agreement has a delegation provision, "California case
26   law is clear that 'an arbitrator has no power to determine the rights and obligations of one who is
     not a party to the arbitration agreement.  The question of whether a nonsignatory is a party to an
27   arbitration agreement is one for the trial court in the first instance.'"  *Benaroya v. Willis*, 23 Cal.
     App. 5th 462, 269 (2018).

28

Defendant.  (ECF No. 15 at 7.)  Defendant further contends, because Plaintiff enjoyed the benefits of being employed with Defendant, he cannot now evade his contractual obligations to arbitrate his claims against his employer under the doctrine of equitable estoppel.  (*Id.* at 8.)  Finally, Defendant argues it can enforce the Agreement as a third-party beneficiary because Defendant's relationship with Maverick, Inc. includes being an affiliate, a successor, an assignee, and an agent.[6]  (*Id.* at 9.)

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting[.]"  Cal. Civ. Code § 1636.  The mutual intention of the parties is determined "'from the written terms [of the contract] alone,' so long as the 'contract language is clear and explicit and does not lead to absurd results.'"  *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020) (quoting *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809 (2007)); Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."), 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible[.]").

Here, the Agreement is between Plaintiff and Maverick, Inc.— not Defendant.  (ECF No. 5-3 at 14–18.)  Thus, the Agreement binds Plaintiff only to disputes with Maverick, Inc.  *See Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.*, 197 Cal. App. 4th 1146, 1153 (2011) ("As a general rule, only a party to an arbitration agreement may enforce it.")  The Court is not persuaded by Defendant's argument, which is unsupported by any authority, that Plaintiff is obligated to arbitrate his claims against Defendant — despite not being named in the Agreement — solely because Defendant is Plaintiff's employer.

However, the Ninth Circuit has indicated there are a variety of ways that a non-signatory may be bound by an arbitration agreement.  Specifically, "non-signatories of arbitration

---

[6]    Defendant also argues it can enforce the Agreement because it is a joint employer of Plaintiff.  However, the Agreement explicitly states "[n]othing herein shall be interpreted to (a) suggest any particular entity or person is or will be [Plaintiff's] employer or joint employer[.]" (ECF No. 5-3 at 17.)  Based on that language, the Court is not persuaded that, at the time of contracting, the mutual intention of the parties was to bind Plaintiff to arbitrate his claims against Defendant, even if Defendant is a joint employer.

1   agreements may be bound by the agreement under ordinary contract and agency principles."

2   *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Letizia v. Prudential Bache*

3   *Securities, Inc.*, 802 F.2d 1185, 1187–89 (9th Cir. 1986)).  Among these principles are the

4   following: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego;

5   and (5) estoppel.  *Id.*  Regarding estoppel, the Ninth Circuit has expressed that it "precludes a

6   party from claiming the benefits of a contract while simultaneously attempting to avoid the

7   burdens that contract imposes."  *Id.*

8        Defendant argues Plaintiff should be precluded from avoiding the burdens that the

9   Agreement imposes — arbitration of his claims — because Plaintiff enjoyed the benefits of being

10  employed by Defendant.  (ECF No. 15 at 8.)  However, Defendant has not put forward any

11  evidence to support its contention that the benefit of being employed with Defendant is a benefit

12  that derived from the instant Agreement.  Rather, the Court discerns no benefit that Plaintiff is

13  attempting to claim from the Agreement.  Thus, the doctrine of equitable estoppel does require

14  Plaintiff's claims to be compelled to arbitration.

15       Finally, the Court disagrees with Defendant's argument that it can enforce the Agreement

16  as a third-party beneficiary because Defendant's relationship with Maverick, Inc. includes being

17  an affiliate, a successor, an assignee, and an agent.  Defendant's evidence purporting to

18  demonstrate its relationship with Maverick, Inc. falls short.  Even if the Management Services

19  Agreement in fact transferred all employees from Maverick, Inc. to Defendant, Defendant offers

20  no authority to support its contention that the alleged transition conferred a right to enforce

21  Maverick Inc.'s Agreement.  The Court is persuaded by Plaintiff's point that if "Defendant truly

22  became the employer of Maverick, Inc.'s former employees, it would have ensured that its

23  employment agreements — including arbitration agreements — accurately reflected that change."

24  (ECF No. 12 at 7.)  Instead, the Management Services Agreement appears to be an agreement

25  whereby Defendant merely provides management services to Maverick, Inc.  Thus, the

26  Management Services Agreement is insufficient for the Court to determine, at this juncture, that

27  Defendant is an affiliate, a successor, an assignee, or an agent of Maverick, Inc.  Based on the

28  evidence before it, the Court finds Defendant is not a third-party beneficiary to the Agreement.

1    In sum, the Court finds Defendant was not a party or third-party beneficiary to the

2    Agreement and thus, cannot enforce it.  Accordingly, Defendant's Motion to Compel Arbitration

3    is DENIED.

4    **IV.    CONCLUSION**

5    For the foregoing reasons, Plaintiff's Motion to Remand (ECF No. 8) is DENIED,

6    Defendant's Motion to Amend (ECF No. 19) is DENIED as moot, and Defendant's Motion to

7    Compel Arbitration (ECF No. 5) is DENIED.

8    Date: September 26, 2025

9

10

11    _____

12    TROY L. NUNLEY
      CHIEF UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28